UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

Chaisson                                                                                           Civil Action 11-0792

versus                                                                                              Judge Tucker L. Melançon

Lafayette Parish School Board                                                   Magistrate Judge Patrick J. Hanna

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment filed by defendant, the Lafayette Parish School Board ("LPSB") against plaintiff, Larry Chaisson, [Rec. Doc. 17] and plaintiff's memorandum in opposition [Rec. Doc. 21]. For the reasons that follow, the motion will be granted.

*I. Background*

Plaintiff Larry Chaisson, who is African-American, was hired by the Lafayette Parish School Board ("LPSB") in October 2004 as a full time non-tenured bus driver. On August 15, 2007, plaintiff was in the School Board Transportation office when he and several other drivers approached Bill Samec, the Director of Transportation, who is a Caucasian, with a question regarding parking at a Lafayette Parish elementary school. The question turned into a heated verbal exchange between plaintiff and Samec which included both parties pointing their fingers in each other's face and ultimately resulted in plaintiff pushing Samec against the wall - causing a dent in the sheet rock. In his Original Petition, plaintiff alleged, "Samec begins shaking his index finger in the face of petitioner. Petitioner demanded he remove his finger from his eminent space repeatedly, to no avail. Petitioner then pointed his finger at

Superintendent Samec. Superintendent then slapped Petitioner's hand and then in an effort to create a space, Petitioner pushed Supervisor away." *R. 1-3, ¶ 5, Petition For Damages*.

Pursuant to the LPSB Policy regarding Allegations of Misconduct by School System employees, *R. 17-4*, the incident was investigated by Billy D. Guidry, the School Board's Chief Financial Officer and Samec's immediate supervisor. Guidry's investigation included: (1) speaking with Lisa Anzalone, Charles Conrad, Charity Butler, Vicky Jacquet, Robert Maw, "Allison" and "Annette," employees who worked in the area where the incident occurred, all of whom indicated they did not witness the incident; (2) obtaining statements from Kimberly Price, a mailroom clerk, and Bill Samec; (3) reviewing statements taken by the school system's risk manager, Ramona Bernard, from employees Donna Jones, Transportation temporary employee, John Gumbs, custodian, and Mona Senegal, custodian; (4) meeting with Police Officers, Corporal Darrell Boudreaux, Officer Cawthorn and Officer Richard, and observing their interview of Donna Jones; (5) meeting with plaintiff and obtaining his written statement; (6) meeting with and obtaining the statement of bus driver, Michelle Davis, a witness identified by plaintiff; and, (7) meeting with bus driver, Cheryl Lewis, a witness identified by plaintiff.[1] *R. 17-3, Aff. of Guidry, Exh. 1*. While the majority of the witnesses were not present during the actual contact between plaintiff and Samec, four of the statements provided eye-witness accounts of the incident. In that regard, the statements of John Grubs, Mona Senegal, Kimberly Price and Donna Jones described Samec's actions, respectively, as, "pushed [Chaisson's] hand

---

[1] Guidry did not interview Pam Gee and Shawnette Randall who Chaisson later identified as witnesses, because Guidry felt he already had adequate support for his recommendation.

away then pushed [Chaisson's] body," "pushed [Chaisson's] hand away," "put his finger up against Mr. Chaisson's chest" and "moved the man's finger out of his face." *Id.* As to plaintiff's actions in the confrontation, all witnesses stated that plaintiff pushed Samec into the wall. *Id.*

Following his investigation, Guidry prepared a report dated August 23, 2007 to then Superintendent, Burnell Lemoine, which stated:

> Description of Incident: A few bus drivers approached Mr. Samec as he was walking to the customer service area and informed him that the Principal at Alice Boucher Elementary had requested that they find another location for parking their buses. Mr. Samec responded by calling the principal to discuss the matter further. Upon his return, he informed the drivers that they would have to find another place for their buses. Mr. Chaisson's response resulted in a heated exchange between he and Mr. Samec. Based on the statements of employees and witnesses, the exchange included profanity, speaking in a raised voice, and "finger in face" by both parties. Statements are not consistent as to whether Mr. Samec initiated any contact with Mr. Chaisson beyond moving Mr. Chaisson's finger out of his face. Statements are consistent in stating that Mr. Chaisson did push Mr. Samec against the wall adjacent to the transportation customer service area. Attached photograph (Schedule I) reflects an indentation and a crack in the area of the wall where Mr. Samec hit after being pushed by Mr. Chaisson.

*R. 17-3, Guidry Report, Exh. 1-A*. Guidry concluded that plaintiff pushed Samec forcefully into a wall, and therefore, plaintiff's actions constituted insubordination. *Id.* Guidry recommended that plaintiff be terminated from his employment. *Id.* Guidry also recommended that a copy of his Report be placed in Samec's personnel file as evidence of the occurrence and as confirmation of his discussion with Samec about the things which contributed to the subject discussion escalating into a dispute and those things he could have done differently in handling

the matter. *R. 17-3.* Guidry avers that his decision had nothing to do with Chaisson's race. *Id, Aff. of Guidry, Exh. 1.*

Plaintiff filed a charge of discrimination with the EEOC. The EEOC issued a Determination letter suggesting that the parties settle the claim, which stated, "According to witnesses, the Director of Transportation initiated the physical altercation. The Director of Transportation was given a write up while [Chaisson] was terminated.... Although, the School Board approved [Chaisson's] termination; it was the Director of Transportation who recommended [Chaisson's] termination." *R. 21-2, 11-24-09 EEOC Determination.* When the issue did not settle, the EEOC issued a Notice of Right to Sue. *R. 21-1, 01-13-11 EEOC Notice.*

Plaintiff originally filed this action in the Fifteenth Judicial District Court, Parish of Lafayette, Louisiana, "in proper person," alleging disparate treatment based on his race in violation of Title VII of the Civil Rights Act of 1964 and the Louisiana Employment Discrimination Law, La.Rev.Stat. § 23:332.[2] *R. 1-3, ¶ 8.* On May 25, 2011, defendant removed the action to this Court. *R. 1.* Thereafter, on September 16, 2011, the Court granted plaintiff's motion to enroll his current counsel of record. *R. 9, 11.*

*II. Summary Judgment Standard*

A motion for summary judgment shall be granted if the pleadings, depositions and

---

[2] As plaintiff alleges in his *pro se* Petition that his discrimination claim is based on race "in violation of Title VII ... and federal, state and local laws," the Court will assume that plaintiff bases his claims on Title VII and the Louisiana Employment Discrimination Law. *R. 1-3, ¶ 8.*

affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)(en banc). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id*. If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial.[3] *Id.* at 322-23.

Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.*, 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on allegations or denials of the adverse party's pleadings

---

[3] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.,* 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322.

as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144. 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson,* 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.,* 958 F.2d 95, 97 (5th Cir. 1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990).

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

### III. Analysis

Defendant moves for summary judgment on plaintiff's race discrimination claim asserting that defendant has stated legitimate, non-discriminatory reasons for terminating plaintiff's employment, for which plaintiff cannot show to be mere pretext. *R. 17.* Plaintiff argues that the LPSB discriminated against him by treating him differently from Samec because Samec was the "aggressor in the situation" and plaintiff's actions were "justified." *R. 21*.

Because the standards governing plaintiff's discrimination claim under Louisiana law are substantively similar to those governing his Title VII claim, the outcome of plaintiff's claims will be the same under the federal and state statutes. *Turner v. Kansas City Southern Ry. Co.*, 675 F.3d 887, 891 (5th Cir. 2012) (citing *Knapper v. Hibernia Nat'l Bank*, 49 So.3d 898, 902 n. 11 (La.Ct.App.2010). Thus, the Court will examine the issues related to plaintiff's federal and state discrimination claims under the well-established Title VII rubric of analysis.

Under Title VII, it is "an unlawful employment practice for an employer ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions,or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove Title VII discrimination through direct or circumstantial evidence. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir.2007). Chaisson has not provided direct evidence of discrimination, therefore, his Title VII claim based on circumstantial evidence is analyzed under the *McDonnell Douglas* burden-shifting evidentiary framework. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir.2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). "First, the plaintiff must establish a prima facie case of discrimination. Second, the employer must respond with a legitimate, nondiscriminatory reason for its decision. This burden on the employer is only one of production, not persuasion, involving no credibility assessments. Third, if the employer carries its burden, the 'mandatory inference of discrimination' created by the plaintiff's prima facie case,'drops out of the picture'

7

and the fact finder must 'decide the ultimate question: whether [the] plaintiff has proven [intentional discrimination].'" *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir.2000) (internal citations omitted).

Once the defendant has presented a legitimate, nondiscriminatory reason for the adverse employment action, the plaintiff must present substantial evidence that each proffered reason is a pretext for discrimination. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir.2003). The plaintiff may satisfy this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Little v. Republic Ref. Co.*, 924 F.2d 93, 96 (5th Cir.1991). "The plaintiff always has the ... ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." *Warren v. City of Tupelo*, 332 F. App'x 176, 180 (5th Cir.2009) (quoting *Tex. Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

In order to prove his disparate treatment claim, plaintiff must first prove a prima facie case of discrimination by showing that (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) others similarly situated were treated more favorably. *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir.2005). The Fifth Circuit defines "similarly situated" narrowly. *Silva v. Chertoff*, 512 F.Supp.2d 792, 803 n. 33 (W.D.Tex.2007) (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir.2005)). Similarly situated individuals must be "nearly identical" and must fall

outside the plaintiff's protective class. *Wheeler* at 405. To show that an employee outside the protected class was "similarly situated" but treated more favorably, a plaintiff must show that the alleged misconduct of both employees was "nearly identical." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir.2001). "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Turner v. Kansas City Southern Ry. Co.*, 675 F.3d 887, 893 (5th Cir. 2012).

Thus, in order to establish a prima facie case based on disparate treatment in this case, plaintiff must show that he and Samec were "nearly identical, similarly-situated individuals." It is undisputed that Samec was the Director of Transportation for the School System and was in a supervisory position over plaintiff, a non-tenured bus driver. Their difference in employment positions vitiates any contention that the two are similarly-situated individuals. Nor has plaintiff suggested that the School Board's policies regarding on-the-job conduct are the same for employees and supervisors. Rather, the record provides that the LPSB's Policy as to employee misconduct specifically includes "insubordination," refusal to obey an order from a superior officer.[4] *R. 17-4;* Black's Law Dictionary, 870 (9th ed.2009) (definition of

---

[4] The LPSB's Allegations Of Misconduct Policy states, in pertinent part:
> For purposes of this policy, the term "misconduct" shall include the commission of immoral offenses involving students or others, corporal punishment, neglect of duty, incompetency, dishonest, insubordination ... or any other conduct which may call into question the employee's ability to discharge the duties attendant to his position.

9

"insubordination." Furthermore, in addition to the difference in status between plaintiff and Samec, plaintiff's acknowledged action of pushing Samec into the wall with enough force to cause a dent was more serious than Samec's alleged action of pushing away plaintiff's finger. *See, Washington v. Potter,* 369 Fed.Appx. 580, 583 (5th Cir. 2010).

For the reasons stated hereinabove plaintiff cannot establish a prima facie case based on disparate treatment. Assuming *arguendo* that plaintiff could establish a prima facie case under disparate treatment racial discrimination, the plaintiff's claim still must fail because defendant has articulated a legitimate, non-discriminatory reason for terminating plaintiff - insubordination based on pushing his supervisor, Samec, into the wall - and plaintiff cannot establish pretext on the part of LPSB. Pushing of a supervisor is akin to "[t]he failure of a subordinate to follow the direct order of a supervisor is a legitimate nondiscriminatory reason for discharging that employee. In a case in which the employer has articulated a rational justification for terminating an employee, and the facts supporting that justification are not seriously disputed, the task of proving pretext becomes quite difficult." *Chaney v. New Orleans Public Facility Management, Inc.*, 179 F.3d 164, 167-168 (5th Cir.1999) (citing *Elliott v. Group Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir.1983)).

Plaintiff argues that the LPSB's reason is pretextual because Samec was the aggressor in the altercation, and therefore his actions were justified. Plaintiff cites the witness statements, *R. 17-4*, as well as the November 24, 2009 Determination letter from the Equal Employment Opportunity Commission ("EEOC"), *R. 21-2*. While the EEOC letter states that "according

to witnesses, [Samec] initiated the physical altercation," the witnesses' statements are consistent that Samec "pushed" or "moved" plaintiff's finger out of his face and that plaintiff pushed Samec with enough force to create a dent in the wall. The Determination letter also states that "it was Director of Transportation [Samec] who recommended [plaintiff's] termination." *R. 21-2.* The undisputed record provides, however, that Guidry, the School Board's Chief Financial Officer and Samec's supervisor, investigated the incident and recommended plaintiff's termination. *R. 17-3.*

While the Fifth Circuit has said that an EEOC determination may be probative of discriminatory intent, *Bugos v. Ricoh, Corp.*, 2008 WL 387654 *14 (5th Cir. Aug. 21, 2008), it is not dispositive, *Price v. Fed. Express Corp.*, 283 F.3d 715, 725 (5th Cir.2002). The Determination letter at issue does not specify the particular evidence upon which the determination was made, does not specify the School Board's articulated reasons for their actions, and does not outline the nature of the investigation conducted. "Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment." *Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir.1997). The Court's findings contradict the basis of the EEOC determination. Therefore, the EEOC Determination letter is insufficient to carry plaintiff's pretext burden. *See Septimus v. Univ. of Houston*, 399 F.3d 601, 610 (5th Cir.2005) (EEOC determination was not sufficient to meet plaintiff's pretext burden when plaintiff failed to rebut defendant's legitimate reason for the adverse employment action).

*Conclusion*

"The ultimate question in every employment discrimination case ... is whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 153 (2000).  Because plaintiff has failed to present competent summary judgment evidence that the LPSB's proffered non-discriminatory reason for terminating plaintiff is a pretext for intentional discrimination, defendant's motion for summary judgment will be granted.